R. A. BENSON, Savings and Loan Commissioner of Texas et al., Appellants,

v.

SAN ANTONIO SAVINGS ASSOCIATION, Appellee.

No. 11049.

Court of Civil Appeals of Texas,

Austin.

Feb. 20, 1963.

Rehearing Denied March 13, 1963.

Kampmann & Kampmann, San Antonio, Will Wilson, Atty. Gen., Bob E. Shannon and Dudley D. McCalla, Asst. Attys. Gen., Austin, for appellants.

Graves, Dougherty, Gee & Hearon, Austin, for appellee.

ARCHER, Chief Justice.

This is an action brought by appellee to set aside an order of the Savings and Loan Commissioner of the State of Texas, denying its application for permission to open and operate its eleventh branch office in San Antonio, Texas, (said branch to be located in Handy-Andy Grocery Store No. 23, located at 4600 Fredericksburg Road). Appellee's application was submitted in July of 1961, a hearing was held on September 26, 1961, and the Commissioner's order of denial was entered on October 26, 1961, on the grounds that the public convenience and advantage would not be promoted; that undue injury to Alamo Savings and Loan Association would result, and that the area designated by appellee was adequately served.

Appellee brought this suit, alleging that such order, and the Commissioner's action, was "illegal, unreasonable, arbitrary and capricious and deprives (appellee) of its

rights without due process of law." Appellants First Federal Savings and Loan Association of San Antonio, Travis Savings and Loan Association and Texas Savings and Loan Association, as well as Alamo Savings and Loan Association, all located in the City of San Antonio, Texas, intervened in support of the Savings and Loan Commissioner's denial.

Following a pretrial hearing and order, the parties went to trial on April 16, 1962. The court entered judgment in favor of appellee, holding: (1) that the order of the defendant denying appellee's application was not reasonably supported by substantial evidence and was unreasonable, arbitrary, and capricious, and was, therefore, null and void; (2) that appellee is granted permission to maintain and operate said branch office in San Antonio; (3) that defendant Commissioner, his employees and agents, and anyone acting for him are permanently enjoined from enforcing said order or interfering in any manner with the opening, maintenance and operation of appellee's office; (4) that said Commissioner, his employees and agents were to enter such orders, execute such instruments and take such other action as may be required to enable appellee to open and operate said office, so long as appellee complies with the valid rules and regulations of the Savings and Loan Commissioner; and (5) that the procedures and actions of the Commissioner did not deny appellee due process of law.

The appeal is founded on three points, with five subpoints under point No. 1, and in substance are that the Trial Court erred in setting aside the order of the Commissioner dated October 26, 1961, which denied appellee's application to maintain a branch office in Handy-Andy Grocery Store No. 23, as not being reasonably supported by substantial evidence, in holding that public convenience and advantage in the area proposed to be served would be promoted by allowing the establishment of the office; in holding that there is no other association adequately serving the neighborhood; in holding proposed operation would not un-duly injure any other association operating in the neighborhood; in holding that the volume of business at the proposed location is such as to indicate a profitable operation; in holding that appellee has operated its principal office for at least three years in accordance with law; in holding that Section 3.3(f) of Chapter 3 of the Rules and Regulations for Building and Loan Associations, as amended November 5, 1960, is not applicable, and in overruling appellant's objections to appellee's questions inquiring into the purported bias or prejudice of the Commissioner.

The record is long and we have read and considered such in detail but will not attempt to state such herein, other than to determine if the finding of the Commissioner is reasonably supported by the record, as adduced on the trial.

■■ The issue before a Trial Court in an appeal from an order of the Commissioner denying (or granting) an application, to be determined, is: Was such action illegal or without reasonable support by substantial evidence? An order of the Commissioner is presumed valid, and the Court cannot substitute its discretion for that of the Commissioner.

■ We, then, consider whether or not the Commissioner's order may be supported by the testimony under the substantial evidence rule.

Under Article 881a–2, Vernon's Ann.Civ. St., the Commissioner finds to his satisfaction, certain fact situations.

In this instant case the Commissioner appears to have been satisfied with all phases of the application except two, although he made no findings to such effect. In stating his reasons for denying the application the Commissioner said:

"The public convenience and advantage will not be promoted by allowing such proposed additional office to engage in business taking into consideration that the proposed location of said additional

office is only 2.1 miles from the applicant's Service Center #7, 2716 Fredericksburg Road; that proposed operation will unduly injure the Alamo Savings and Loan Association presently 3 miles distant and only 1.7 miles from their future location (land purchased for erection of) office building at the corner of Fredericksburg Road and Vance Jackson Road; that the proposed area is being adequately served."

Since the only fact finding made by the Commissioner is that public convenience and advantage will not be promoted by allowing such proposed additional office to engage in business; and, that the proposed operation will unduly injure the Alamo Savings and Loan Association. The Alamo is not appealing and is no longer a party to the case.

We therefore do not consider as essential to a disposition of this appeal, other phases of the case since we judge the propriety of the Commissioner's action solely by the reasons given therein. Cleveland A. Skates v. City of Paris, No. A–9237, Vol. 6, Page 226, No. 14, T.S.C.J., January 12, 1963. Burlington Truck Lines v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207, December 17, 1962.

The evidence relied on in refusing the application may be sufficiently reviewed without going into too great detail, as that given by Roy E. McGinnis, a witness called by the defendant, who testified that he was vice-president of Alamo Savings & Loan Association and detailed his qualifications and experience in the savings and loan industry and as to the area of the proposed location of the branch office and the Wonderland City and the population and trade of the business situated therein. The witness further testified as to the number and location of the several branches of loan associations, and the expenses of usual operations and of the expected revenue and doubted that the branch proposed would realize a profit within three years, (the witness described the effort to secure a new

location by the Alamo and the granting thereof and that he believed that the granting of the branch sought by the plaintiff would injure Alamo) and that the operation of a savings and loan branch in a grocery store was undignified and actually unsafe and extravagantly costly in nature.

Louis L. Michael, called by defendant, testified that he was president of Travis Savings & Loan Association, an intervenor, and of his experience in the loan and real estate business and that his association had no branches. The witness gave detailed testimony as to the operation of loan companies and particularly as to branches, and that he did not believe the proposed branch would be profitable and that the opening of any branch would injure all savings associations and would tend to create a monopoly.

Charles W. Cart called by intervenor, First Federal Savings & Loan Association and president thereof, testified as to the operation of savings associations generally and of his own in particular and that the granting of the branch would injure his association and would strangle his association to death; that First Federal had never applied for a branch and had no plans to apply for one.

There was much testimony given in regard to the trade area for the Wonderland Shopping City and the population growth thereof.

The proposed location is 2.1 miles from appellee's branch No. 7, 2.6 miles from branch No. 2, 3.6 miles from branch No. 11, 4.5 miles from branch No. 20, 2.8 miles from Alamo Savings and Loan Association and 1.7 miles from Alamo's new office location.

The testimony in support of the application for the branch are exhibits concerning growth of savings, population of area and the shopping center as a whole and that of witnesses testifying as to a profitable operation of the branch, public needs, and that the branch would not unduly injure

any other association operating in the area concerned, among whom were Dr. Lawrence J. Tidrick, testifying as an expert, who set out his qualification and business experience, stated that the growth in San Antonio, as to population and business was very great, and in the witness' opinion would continue to expand with a population of nearly 1,000,000 in 1970.

Walter Lehr, Jr. a real estate consultant and appraiser, concurred in the statements given by Dr. Tidrick.

Charles Becker, vice-president of Handy-Andy and primarily responsible for the development of Wonderland Shopping City, testified as to selection of the site for the center beginning in 1954, and of its growth and that the site was believed to be a coming area, rather than an exclusive residential district, and described the extent, value, size and development of the center; that there were 38 business establishments in operation and others moving in. The witness testified that customers from great distances would be pulled in, but that its steady business is the primary trade zone of about 27 mile radius around it.

The expanding area was testified to as containing over 36,000 people, with approximately 10,000 new homes constructed since 1945; and of a need for a savings office.

We do not believe that the action of the Commissioner in denying the application is or was supported by the evidence adduced on the trial and that such action was arbitrary and unreasonable and that the Trial Court was justified in setting such order aside and we affirm such judgment.

We now consider that portion of the judgment ordering the Commissioner to enter such order, execute such instruments and take such other action as may be required to enable plaintiff to open and maintain such office, so long as the plaintiff complies with valid rules and regulations of the Savings and Loan Commissioner respecting such operation, and do not believe the Trial Court can make necessary findings not found or rejected by the Commissioner or substitute its discretion for his, and reverse the judgment in this respect.

"A court has the right to review the action of the Railroad Commission, and to strike its orders down if they are illegal; but it has no authority to write a proration order for the Commission, nor to prescribe the terms of a subsequent order to be entered by the Commission." Marrs et al. v. Railroad Commission of Texas, 142 Tex. 293, 177 S.W.2d 941. Railroad Commission of Texas v. Rowan Oil Company, 152 Tex. 439, 259 S.W.2d 173. City of Waco v. Akard, 252 S.W.2d 496, Tex.Civ.App., er. ref. n. r. e. Railroad Commission of Texas v. The Texas Company, 298 S.W.2d 666, Tex. Civ.App., er. ref. n. r. e.

In view of our disposition of this cause we do not deem it essential to give further consideration of other phases of the appeal.

The judgment of the Trial Court is affirmed insofar as the action of the Commissioner in denying the application is concerned, but reverse the judgment in granting appellee permission to operate a branch office as applied for, and in enjoining the Commissioner from interfering with the opening and operating the said branch office, and in ordering the Commissioner to enter such orders as may be required to enable appellee to open and maintain said office, etc.

The judgment is affirmed in part and reversed in part.

Affirmed in part and reversed in part.